OPINION
{¶ 1} Defendants-appellants, Four Square Builders, Inc. ("Four Square"), Raymond E. Robinson and Connie Robinson,[1] appeal from a judgment of the Franklin County Court of Common Pleas which denied their Civ.R. 60(B) motion for relief from a cognovit judgment taken by plaintiff-appellee, Fifth Third Bank (Central Ohio) ("Fifth Third").
 {¶ 2} Preliminarily, we must address the issue of whether the trial court's June 9, 2004 entry which found in favor of Fifth Third on several cognovit notes was a final appealable order. Fifth Third first raised this issue via a motion to dismiss filed October 13, 2005. By journal entry filed November 15, 2005, this court denied Fifth Third's motion to dismiss on an alternative ground without addressing the final appealable order issue. Both parties contend that the cognovit judgment is not a final appealable order from which Civ.R. 60(B) relief can be taken.
 {¶ 3} The instant case is one of three consolidated actions arising out of a complex business relationship involving multiple loan agreements and obligations among the Robinsons, Fifth Third, Thomas M. Gilligan and various business entities. To resolve complicated factual and procedural history of all three cases.
 {¶ 4} Prior to January 2000, Robinson owned American Church Builders ("ACB"). In January 2000, he sold ACB to the Kingston Group and established three new entities, Motion Media Group, Inc. ("Motion Media"), Digital Reality Corporation, and Four Square. The Robinsons owned equal shares of Four Square stock. Robinson funded his new endeavors through small business loans from Fifth Third, with whom he had a long-standing business relationship.
 {¶ 5} Robinson continued his business relationship with Fifth Third following creation of the new entities. On November 9, 2000, Four Square executed a $450,000 cognovit promissory note, which was subsequently renewed on November 9, 2001. On February 16, 2001, Four Square executed a $320,000 cognovit construction loan mortgage note. On the same day, the Robinsons executed individual cognovit unlimited payment guaranties, guaranteeing all indebtedness and liabilities of Four Square to Fifth Third, including all existing and future renewals, extensions and modifications.
 {¶ 6} Sometime in December 2001 or January 2002, Robinson and Gilligan negotiated the creation of a joint enterprise. The proposed transaction entailed the contribution of Robinson's assets in his existing companies to form a new entity, Power Plant Ltd. ("Power Plant"). Power Plant would obtain financing from Fifth Third, using the transferred assets for collateral, and pay off the debts owed by Robinson's companies and collateralized by the transferred assets. Gilligan would contribute real property he already owned to the formation of Power Plant. The assets held by Power Plant were then to be transferred to various subsidiaries of Power Plant.
 {¶ 7} Pursuant to these discussions, Robinson formed Power Plant in January 2002. In February 2002, he created several Power Plant subsidiaries. In mid-to-late March 2002, Gilligan signed an operating agreement for Power Plant. By virtue of this agreement, Gilligan and Robinson owned equal shares of Power Plant and Four Square.
 {¶ 8} Thereafter, on March 27, 2002, Power Plant executed three promissory notes payable to Fifth Third-one for $1,100,000, one for $867,000, and one for $898,000. Two days later, on March 29, 2002, Robinson, individually, executed an $85,000 cognovit term note.
 {¶ 9} On January 31, 2003, Four Square executed a $292,500 cognovit draw note. On the same day, Fifth Third, Power Plant Properties (a Power Plant subsidiary), Four Square, Motion Media, and the Robinsons entered into a Cross-Collateralization Agreement. The agreement outlined the outstanding indebtedness of Power Plant, Four Square, Robinson and Motion Media. In particular, the agreement stated that the $1,100,000 Power Plant note was secured by a mortgage on real property owned by Power Plant, a mortgage on real property owned by the Robinsons, the assignment of Giligan's personal $750,000 savings account with Fifth Third, and the unlimited payment guaranties of Robinson and Gilligan; the $867,000 note was secured by a mortgage on real property owned by the Robinsons and the unlimited payment guaranties of Gilligan and Robinson; and the $898,000 note was secured by a mortgage on real property owned by the Robinsons, the assignment of Gilligan's personal $750,000 savings account, and the unlimited payment guaranties of Gilligan and Robinson.
 {¶ 10} The agreement further specified that the $320,000 and $450,000 Four Square notes were secured by a mortgage on real property owned by Four Square and the unlimited payment guaranties of Robinson and Gilligan; and the $292,500 Four Square note was secured by a mortgage on real property owned by Four Square and the unlimited payment guaranties of the Robinsons and Gilligan.
 {¶ 11} The agreement further indicated that a Motion Media lease agreement dated May 5, 2000 was secured by leased equipment described in the lease.
 {¶ 12} The agreement listed Robinson's outstanding indebtedness as the March 29, 2002 note, secured by a mortgage on real property owned by Four Square, a February 16, 2001 equity line of credit for $165,000 and a May 6, 2002 equity line of credit for $600,000; the equity lines of credit were secured by a mortgage on real property owned by the Robinsons.
 {¶ 13} The agreement modified the payment terms and extended the due date of the Power Plant obligations, extended the maturity date of the Four Square obligations, and extended additional credit to Four Square. The agreement further indicated that all of the mortgages, security interests and guaranties secured payment to Fifth Third of all liabilities owed by the borrowers to Fifth Third.
 {¶ 14} On December 31, 2003, Power Plant, Gilligan, Robinson and Fifth Third executed a Forbearance Agreement which extended the due dates on all three Power Plant notes and ratified and confirmed the unlimited payment guaranties of Robinson and Gilligan.
 {¶ 15} On June 3, 2004, Gilligan filed a verified complaint against Robinson, Fifth Third and several John Doe defendants; he amended the complaint on June 14, 2004. Gilligan asserted claims against Robinson for breach of fiduciary duty, conversion, unjust enrichment, fraud, and negligent misrepresentation arising out of Robinson's alleged representation that the proceeds of the Power Plant loans would be used to pay off existing loans secured by the assets transferred by Robinson to Power Plant, to purchase additional assets, and to pay for improvements to the property transferred to Power Plant, and Robinson's subsequent usurpation of the proceeds to pay his own personal obligations unrelated to Power Plant activities. Gilligan also sought to enjoin Robinson from interfering with his attempt to sell real property owned by Powerplant Properties to pay Power Plant's debts. He also requested an accounting by Robinson of the assets and liabilities of Power Plant and its subsidiaries.
 {¶ 16} Gilligan also asserted claims against Fifth Third for abetting breach of fiduciary duty, fraud, negligent misrepresentation and unjust enrichment relating to the alleged improper distribution of the proceeds of the Power Plant loans to Robinson and his affiliated persons and entities. Gilligan also sought a declaratory judgment that his unlimited payment guaranty be declared void and unenforceable.
 {¶ 17} Gilligan further alleged that the John Doe defendants were unjustly enriched by the satisfaction of their obligations to Fifth Third by Power Plant and that a constructive trust should be placed on the assets of the John Doe defendants for the benefit of Power Plant.
 {¶ 18} On June 4, 2004, the Robinsons filed a complaint against Fifth Third and Gilligan. The Robinsons alleged that, at the time Power Plant was created, Gilligan, Robinson and Fifth Third agreed that Fifth Third would issue new notes, to be signed by Gilligan and Robinson, to cover Four Square's outstanding loans; that Gilligan would place $750,000 in a restricted account with Fifth Third to serve as collateral; that Fifth Third and Gilligan agreed that Gilligan would assume and sign for 50 percent of the liabilities of Power Plant and Four Square in exchange for Connie Robinson's transfer of her share of the ownership of Four Square, thereby releasing her from all liability for the debts of Four Square; and that Fifth Third was responsible for completing the documentation related to this transaction. The Robinsons further alleged that unbeknownst to them, Gilligan informed Fifth Third that he would not sign the new notes or otherwise assume responsibility for the debts of Four Square. The Robinsons further alleged that based upon Gilligan's representations, and believing Gilligan to have signed the new notes, Connie Robinson transferred her interest in Four Square to Gilligan, resulting in Gilligan owning half of Four Square without assuming liability for any of its debt. The Robinsons also asserted that Gilligan falsely represented the physical condition of the properties he contributed to the Power Plant venture.
 {¶ 19} The Robinsons also alleged that Fifth Third unilaterally changed the terms of the loans, mismanaged the Four Square and Power Plant accounts, permitted Gilligan to pay Power Plant's operating expenses by drawing down the restricted cash collateral without Robinson's knowledge, acted to protect itself and Gilligan at the Robinsons' expense, falsely represented to Connie Robinson that she was required to sign a personal guaranty for the Four Square loans, and interfered with a contract between the Kingston Group and Connie Robinson.
 {¶ 20} Based upon these allegations, the Robinsons asserted claims against Fifth Third for fraud, fraud in the inducement, breach of fiduciary duty, tortious interference with contract, lender liability, negligence, and breach of contract. The Robinsons also sought injunctive relief to prevent Fifth Third from executing on the payment guaranties. The Robinsons also asserted claims against Gilligan for fraud and breach of contract.
 {¶ 21} On June 7, 2004, Fifth Third filed a complaint against Four Square, the Robinsons, Power Plant, Powerplant Properties, Motion Media, and several other defendants, Ohio Bureau of Workers' Compensation ("bureau"), Capital City Millwork, Inc. ("Capital City"), Dranium Directional, Calvary SPV I, Ohio Department of Taxation, and Citifinancial, Inc., who may have had an interest in the properties securing the notes. The complaint sought judgment from Four Square and the Robinsons (pursuant to their unlimited payment guaranties) on the three Four Square cognovit notes and judgment from Robinson on his individual cognovit note. Fifth Third also requested that the defendants who may have claims against the mortgaged properties be required to answer. Fifth Third also sought foreclosure on all of the properties which had been mortgaged as collateral for the cognovit notes. Fifth Third asserted that, by virtue of the Cross-Collateralization Agreement, all of the mortgages on the real property discussed therein became security for the cognovit notes.
 {¶ 22} The bureau and Capital City answered Fifth Third's complaint, asserting an interest in the property owned by Four Square.
 {¶ 23} On June 14, 2004, Power Plant and Powerplant Properties filed an answer to Fifth Third's complaint and asserted counterclaims for abetting breach of fiduciary duty, fraud, and negligent misrepresentation relating to Robinson's alleged improper appropriation of proceeds of the Power Plant loans. Power Plant also sought a declaratory judgment that, due to Fifth Third's fraudulent and/or negligent misrepresentations regarding the use of the proceeds from the Fifth Third loans, the notes securing those loans should be declared void and unenforceable. Power Plant also asserted cross-claims against Robinson for breach of fiduciary duty, conversion, and unjust enrichment arising out of Robinson's alleged improper use of the proceeds of the Power Plant loans. Power Plant also requested that Robinson account for the assets and liabilities of Power Plant and its subsidiaries.
 {¶ 24} On June 9, 2004, the trial court entered judgment against Four Square and the Robinsons on the applicable cognovit notes and related cognovit guaranties, using Civ.R. 54(B) language. On June 16, 2004, Four Square and the Robinsons filed a Civ.R. 60(B) motion requesting that the trial court vacate the cognovit judgment on grounds that the Robinsons had, in their action filed on June 4, 2004, asserted claims that served as meritorious defenses to Fifth Third's cognovit claims, thereby precluding the cognovit judgment on Fifth Third's complaint.
 {¶ 25} On July 9, 2004, the trial court stayed execution of the cognovit judgment until the court ruled on the Civ.R. 60(B) motion.
 {¶ 26} On July 12, 2004, Robinson filed an answer to Gilligan's complaint, counterclaims for fraud, breach of contract and unjust enrichment against Gilligan and cross-claims for fraud, fraud in the inducement, breach of fiduciary duty, tortious interference with contract, lender liability, negligence, breach of contract and injunctive relief against Fifth Third. The allegations supporting these claims were substantially similar to those asserted in the Robinsons' June 4, 2004 complaint.
 {¶ 27} On July 19, 2004, Fifth Third filed an answer to Gilligan's amended verified complaint, a counterclaim against Gilligan, and cross-claims against Robinson, Power Plant, Motion Media, ACB, and RER Properties ("RER"). Fifth Third alleged that Robinson and Gilligan were liable on the Power Plant notes pursuant to their unlimited payment guaranties, which, according to Fifth Third, were ratified and confirmed in the forbearance agreement. Fifth Third also alleged that Motion Media had defaulted on a lease agreement executed on May 5, 2000 and that Robinson, RER, and ACB were liable for such default pursuant to unlimited payment guaranties executed as part of the lease transaction. Fifth Third sought judgment against Power Plant, Gilligan and Robinson on the three Power Plant notes and the Motion Media lease agreement.
 {¶ 28} Upon motion of Fifth Third, the trial court, on September 27, 2004, consolidated Fifth Third's case with the previously consolidated Robinson and Gilligan cases.
 {¶ 29} With leave of court, Fifth Third, on January 27, 2005, filed an amended complaint against Four Square and the Robinsons. In the amended complaint, Fifth Third acknowledged that a cognovit judgment had been rendered on the three Four Square notes and Robinson's individual note. Fifth Third's new claims alleged that the Robinsons had defaulted on the $165,000 and the $600,000 equity lines of credit.
 {¶ 30} With leave of court, Gilligan, on May 17, 2005, filed a second amended complaint against Fifth Third, the Robinsons and Christ Community Church ("CCC"). Gilligan reasserted the claims raised in his amended verified complaint, and asserted new claims against Connie Robinson and CCC for unjust enrichment and constructive trust stemming from Robinson's alleged improper appropriation of the proceeds from the Power Plant notes to satisfy their obligations. Fifth Third reasserted its answer, counterclaims and cross-claims entered in its July 19, 2004 filing.
 {¶ 31} On June 8, 2005, pursuant to a joint motion of Fifth Third and Gilligan, the trial court dismissed all claims asserted by Fifth Third against Gilligan without prejudice, and all claims asserted by Gilligan against Fifth Third with prejudice.
 {¶ 32} On August 26, 2005, the trial court denied the Civ.R. 60(B) motion filed by Four Square and the Robinsons, but stayed execution of the judgment pursuant to Civ.R. 62(E) pending final adjudication of all the claims involved in the consolidated action.
 {¶ 33} Four Square and the Robinsons filed a notice of appeal on September 26, 2005 from the trial court's August 26, 2005 judgment denying their motion for relief from the June 9, 2004 cognovit judgment, advancing a single assignment of error for our consideration:[2]
1. The Trial Court erred when it denied appellants' motion to vacate the Cognovit Judgment against Raymond E. Robinson.
 {¶ 34} Both parties, citing this court's decision in Matrkav. Stephens (1991), 77 Ohio App.3d 518, contend that the June 9, 2004 cognovit judgment is not a final appealable order from which Civ.R. 60(B) relief can be taken. We agree.
 {¶ 35} In Matrka, a bank loaned money to Larry and Claudia Stephens, Paul and Barbara Matrka, Wendell and Claire Kessler, and two publishing companies, in exchange for which the borrowers executed a cognovit note. The bank later sold the note to the Matrkas pursuant to a loan purchase agreement. The Matrkas then instituted an action against the co-makers for judgment on the cognovit note and various other monies claimed to be owed by the other parties. The Matrkas also sought foreclosure on the Kesslers' home, which had been mortgaged as collateral for the cognovit note, judgment against the Stephens through their guarantor, First Security, for the amount owed on the note, and named numerous other sources of judgment against the Stephens.
 {¶ 36} The trial court issued judgment against the defendants on the cognovit note using Civ.R. 54(B) language. Stephens filed a Civ.R. 60(B) motion which was denied by the trial court without Civ.R. 54(B) language. Stephens appealed, and the Matrkas moved to dismiss on grounds that the ruling on the Civ.R. 60(B) motion failed to meet statutory requirements for being a final appealable order since it lacked Civ.R. 54(B) language.
 {¶ 37} This court dismissed the appeal, finding that Civ.R. 60(B) relief was not appropriate because the underlying cognovit judgment from which Stephens sought relief was not a final appealable order. In so finding, this court acknowledged the general rule that a judgment overruling a Civ.R. 60(B) motion is a final appealable order. Id. at 520, citing Colley v. Bazell
(1980), 64 Ohio St.2d 243, 245. This court further noted, however, that a party may seek Civ.R. 60(B) relief only from a final judgment. Id., citing Jarrett v. Dayton Osteopathic Hosp.,Inc. (1985), 20 Ohio St.3d 77, 78. Accordingly, this court determined that the dispositive issue was whether the underlying order from which Stephens sought relief was a final appealable order. Id.
 {¶ 38} To that end, this court noted that the Supreme Court of Ohio held in both Noble v. Colwell (1989), 44 Ohio St.3d 92, and Chef Italiano Corp. v. Kent State Univ. (1989),44 Ohio St.3d 86, syllabus, that an order adjudicating fewer than all the claims or the rights and liabilities of fewer than all the parties must meet the requirements of both Civ.R. 54(B)[3]
and R.C. 2505.02[4] in order to constitute a final appealable order, and that the Noble court also stated that "the mere incantation of the required [Civ.R. 54(B)] language does not turn an otherwise non-final order into a final appealable order." Noble, at 96.
 {¶ 39} Having determined that the entry granting judgment on the cognovit note had to comply with both Civ.R. 54(B) and R.C.2505.02 to constitute a final appealable order, this court examined both the Matkras' complaint and a counterclaim asserted by Stephens. This court noted that several of the counts asserted in the Matrkas' complaint that were not addressed by the trial court's entry applied to the Stephens as parties and related directly to issues and property designated in the count upon which the court did rule. In particular, the court noted that two counts were facially relevant to the cognovit note and the underlying debt, since those counts related to First Security's guaranty of the Stephens' investment and the security interest granted the bank in 30 percent of the First Security stock they owned. In addition, a third count involved a foreclosure action on the Kesslers' home, which had been mortgaged as collateral for the debt. This court further noted that Stephens' counterclaim alleged that Paul Matrka failed to perform his fiduciary duty pursuant to a partnership agreement between Matrka and Stephens and sought dismissal of the complaint, a formal accounting of partnership affairs, and damages.
 {¶ 40} This court found that the trial court's judgment on the cognovit note did not completely determine the Matrkas' action against Stephens, or Stephens' counterclaim against Paul Matrka, because those claims remained outstanding. This court further found that the Matrkas were not prevented from obtaining a judgment against the Stephens and the Kesslers on the Matrkas' claims. Accordingly, this court concluded that, even though the trial court included Civ.R. 54(B) language, the requirements of R.C. 2505.02 were not met and the judgment on the cognovit note was an interlocutory, rather than a final, order; as such, Civ.R. 60(B) relief was not available. This court dismissed the appeal as not having derived from a final appealable order.
 {¶ 41} In accordance with this court's decision in Matrka,
the trial court's order granting Fifth Third a cognovit judgment does not "determine the action" as required by R.C. 2505.02. Since the trial court cases were consolidated, they became one single action subject to the requirements of Civ.R. 54(B) and R.C. 2505.02. See Tadmor v. Huntington Natl. Bank, Summit App. No. 22760, 2006-Ohio-1046, at ¶ 14. The notes that are the subject of the cognovit judgment represent only part of the total global lending relationship encompassing Fifth Third, Gilligan, the Robinsons, Power Plant, Motion Media, and Four Square. The cross-collateralization agreement outlines the outstanding indebtedness of all the parties and indicates that all of the mortgages, security interests and guaranties noted therein secure payment to Fifth Third of all liabilities owed by all the parties to Fifth Third.
 {¶ 42} Several of the counts asserted in Fifth Third's complaint involve foreclosure actions on properties owned by either Four Square, the Robinsons, or Power Plant, which were mortgaged as collateral for the cognovit notes. In addition, two of the defendants named in the complaint — the bureau and Capital City, have asserted an interest in the mortgaged property. All of these claims remain pending. Further, Fifth Third's amended complaint asserts additional claims against the Robinsons related to their alleged default on two equity lines of credit, both of which are included in the cross-collateralization agreement. These claims have not yet been resolved.
 {¶ 43} Further, the claims asserted in the Robinsons' complaint against Fifth Third and Gilligan relate to the notes underlying the cognovit judgment at issue and have yet to be resolved. Also unresolved are the claims between Gilligan and Robinson related to the three promissory notes executed by Power Plant.
 {¶ 44} Because the pending claims are clearly related to the ultimate determination of what Four Square and the Robinsons may ultimately owe Fifth Third, the trial court's June 9, 2004 cognovit judgment was an interlocutory, rather than a final, order; as such, Civ.R. 60(B) relief was not available. Accordingly, pursuant to Matrka, this court must dismiss the instant appeal as not having derived from a final appealable order.
Appeal dismissed.
Brown and Sadler, JJ., concur.
[1] Where appropriate, Raymond and Connie Robinson will jointly be referred to as "the Robinsons." Otherwise, Raymond E. Robinson will be designated "Robinson."
[2] On August 12, 2005, the trial court filed a decision and entry identical to the one filed on August 26, 2005. In its October 13, 2005 motion to dismiss, Fifth Third argued that the September 26, 2005 appeal filed by the Robinsons and Four Square was untimely, having been filed more than 30 days from the August 12, 2005 judgment. Via journal entry filed November 13, 2005, this court denied Fifth Third's motion to dismiss, determining that the clerk's docket failed to reveal that notice of the August 12, 2005 judgment was mailed to parties within rule from journalization of the judgment in accordance with Civ.R. 58(B).
[3] At the time, Civ.R. 54(B) provided that "[w]hen more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim or third-party claim, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of such determination, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."
[4] R.C. 2505.02 provides, in part, that "[a]n order that affects a substantial right in an action which in effect determines the action and prevents a judgment * * * is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial."